American Motorists Ins. Co. v. American Ins. Co.

AMERICAN MOTORISTS INSURANCE COMPANY *vs.* AMERICAN
INSURANCE COMPANY & others.[1]

Suffolk.   April 12, 1982. — July 30, 1982.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

*Agency*, Agent's duty of fidelity.   *Insurance*, Agent, Broker.

When an agent representing several insurance companies was asked by
   one of the companies to reduce or cancel that company's commitment
   to insure a building, the agent was acting exclusively as the agent of
   that company and was without any authority he might have otherwise
   possessed to divide the coverage and bind five other companies he rep-
   resented to insure that building without first disclosing his representa-
   tion of the first company and obtaining the consent of the other com-
   panies to the transaction.  [265-267]

CIVIL ACTION commenced in the Superior Court on De-
cember 13, 1976.

The case was heard by *Sullivan, J.*

*Brian R. Merrick* for the defendants.

*Gerald W. Motejunas* for the plaintiff.

HALE, C.J.   This action was brought by American Motor-
ists Insurance Company (American Motorists) as assignee of
H.S. Corporation and William H. Dolben & Sons (the in-
sureds) to recover on what American Motorists alleges are
five contracts of fire insurance entered into several hours
before a fire seriously damaged the insured property.  The
plaintiff alleges that these contracts were entered into on
behalf of the defendants and the insureds by their common
agent, Frank Byers.  The defendants deny that Byers ever
entered into such contracts and argue that, even if he pur-

---

[1] Hanover Insurance Company (Hanover), Hartford Fire Insurance
Company (Hartford) and New Hampshire Insurance Company (New
Hampshire).

ported to do so, he was without authority to act on their behalf. After a bench trial judgments were entered in favor of American Motorists against Hartford and New Hampshire; but judgments were also entered dismissing the complaint with respect to American and Hanover. American Motorists, Hartford and New Hampshire have all appealed from the judgments adverse to them.[2]

We summarize the judge's findings of fact. At all times relevant to this action Byers, as a principal of Caddell and Byers, Inc., was engaged in the business of writing major insurance coverage and was an authorized insurance agent for each of the parties. During this period Byers also served as agent and broker for the insureds, under a grant of "general blanket authority" to place insurance for them and to maintain insurance which they had in effect.

Prior to February 14, 1975, American Motorists had provided a construction insurance policy on three apartment buildings being constructed by the insureds in Rockland. When American Motorists issued notices to the insureds stating that the coverage would be cancelled as of February 14, 1975, because construction on those buildings had been completed, Byers requested American Motorists to continue coverage on one building which he believed was still under construction.

On February 14, 1975, American Motorists authorized Byers to issue an insurance binder protecting the third building against loss from fire in the amount of $666,640. That binder was prepared and delivered to the insureds on that date. On February 19, however, American Motorists informed Byers that, because of a dispute as to the occupancy of the buildings, it wished to withdraw its commitment to insure. Byers agreed to replace or reduce American Motorists' commitment and decided to divide and place the coverage with American Motorists and five other insurance companies which he represented. Byers informed American

---

[2] A fifth defendant insurance company settled the claim against it and is not involved in this appeal.

Motorists of that decision in a phone conversation around 2:00 P.M. that day, saying that "he would issue the binders." At the same time, he warned American Motorists that he was not sure "if all of the binders would stick."

Two hours later, while the binders were being prepared, Byers received a phone call informing him that the third building was on fire. After receiving that call, Byers, consistent with his normal business practice, had the binders completed and sent to the individual insurers unsigned. On February 24, he also sent each of the defendants letters informing them of the fire and that they had been "committed" to a portion of the risk several hours before it occurred. All the defendants denied they were on the risk and refused to participate in the loss. American Motorists settled the loss with the insureds and received an assignment of the insured's rights against the defendants. It then commenced the present action.

We are of opinion that resolution of this case is governed by a basic principle of agency law which precludes an agent from serving two masters. "Undivided loyalty to [the principal is] due from [the] agent. 'It is well settled that the agent is bound to exercise the utmost good faith in his dealings with his principal. As Lord Cairns said, this rule "is not a technical or arbitrary rule. It is a rule founded on the highest and truest principles of morality." *Parker* v. *McKenna*, L.R. 10 Ch. 96, 118 [1874].' *Little* v. *Phipps*, 208 Mass. 331, 333 [1911]." *J.C. Penney Co.* v. *Schulte Real Estate Co.*, 292 Mass. 42, 44 (1935). In *J.C. Penney Co.*, the court rescinded a long term lease solely because the plaintiff's agent had failed to disclose his representation of adverse interests. The court reached this result despite the absence of any showing that the underlying transaction was unfair. Hence, the mere fact of the agent's double employment provided the plaintiff with the right to rescind. *Id.* at 45. See also *Swaney* v. *Clark-Wilcox Co.*, 331 Mass. 471, 476 (1954); *Rozen* v. *Cohen*, 350 Mass. 231, 233-234 (1966).

Application of this principle to the present facts demonstrates that Byers committed breaches of the fiduciary obli-

gations he owed to the defendants by his simultaneous representation of American Motorists and the defendants in rearranging the insurance coverage on the third Rockland building. Once American Motorists had requested Byers to cancel or reduce its February 14 binder, Byers owed American Motorists the duty to use his best efforts to comply with that request. At the same time, however, Byers owed each of the defendants an equally compelling duty not to commit them to a risk which was in any way undesirable. Although the record does not clearly reflect the reasons underlying American Motorists' desire to get out from its commitment to insure the third building, these conflicting obligations show that this is not a situation in which Byers could serve both American Motorists and the defendants. Once Byers had agreed to attempt to reinsure the third building on American Motorists' behalf, he was acting exclusively as the agent of that company and was without any authority he might otherwise have possessed to bind the defendants to insure that building until he had disclosed his representation of American Motorists and obtained the defendants' consents. *J.C. Penney Co., supra,* 292 Mass. at 45. Contrast *Seigel* v. *Cambridge-Wendell Realty Co.,* 323 Mass. 598, 602-603 (1949).[3] It does not appear in the record that this was done, and it was the plaintiff's burden to make it appear if in fact it had occurred. Although no Massachusetts decision has considered the limits on an insurance agent's authority in these circumstances, we note that the result we reach is in accord with that reached in several other jurisdictions. See *Empire State Ins. Co.* v. *American Cent. Ins. Co.,* 138 N.Y. 446 (1893); *London & Lancashire Fire Ins. Co.* v. *Turnbull,* 86 Ky. 230, 239 (1887); *Manchester Fire*

---

[3] We wish to emphasize that our decision rests solely on Byers' simultaneous representation of insurers with potentially conflicting interests. This is not a case where the insureds were involved, other than collaterally, nor one where they were prejudiced. Accordingly, we have not considered what, if any, constraints exist on an insurance agent who simultaneously seeks to represent both the insurer and the insured. Moreover, there was no evidence of any industry custom which would apply in this case.

*Assur. Co.* v. *Insurance Co. of Ill.*, 91 Ill. App. 609 (1900). It also reflects the views taken by leading commentators in this area, 13A Appleman, Insurance Law and Practice § 7685 (1976); 4 Couch, Insurance § 26:345 (2d ed. 1960), and by the American Law Institute, Restatement (Second) of Agency § 391 (1958). Accordingly, we hold that once American Motorists had requested Byers to reduce its commitment to insure the third Rockland building, Byers' subsequent actions were taken exclusively on American Motorists' behalf and could not bind the defendants vis-à-vis American Motorists without prior disclosure of his adverse interests and without obtaining their consents.[4]

The judgments entered in favor of American Motorists are therefore reversed, and judgments are to be entered dismissing the action as to Hartford and New Hampshire. The judgments dismissing the action as to American and Hanover are affirmed.[5]

*So ordered.*

---

[4] It is our view that the agency contracts between Byers and the defendants related at most to Byers' authority to bind the defendants to insureds as opposed to other insurers.

[5] The record appendix in this appeal consisted in part of twenty-two exhibits listed only by their numbers in the table of contents. This type of table of contents is next to useless and did not comply with the spirit of Mass.R.A.P. 18(d), as amended, 367 Mass. 921 (1976).