## Brockton Education Association *vs.* School Committee of Brockton.

No. 96-P-1387.

Plymouth. November 19, 1998. - May 28, 1999.

Present: Warner, C.J., Brown, & Lenk, JJ.

*Municipal Corporations,* Collective bargaining, Group insurance. *School and School Committee,* Collective bargaining, Group insurance. *Insurance,* Group. *Statute,* Construction.

A municipality did not violate the provisions of G. L. c. 32B, § 7A, mandating equality in contribution rate for health insurance premiums for all municipal employees, by reason of a seven-month period during which the municipality's contribution rate differed among certain employee groups due to the expiration and renegotiation of multiple collective bargaining agreements, where the municipality made subsequent retroactive equalizing adjustments which resulted in ultimate contributory parity for all municipal employees with respect to those premiums for that period. [38-41]

Civil action commenced in the Superior Court Department on September 30, 1994.

The case was heard by *John M. Xifaras,* J., on motions for summary judgment.

*Mark G. Kaplan* for the plaintiff.

*Kevin P. Feeley, Jr.,* for the defendant.

Lenk, J. The plaintiff, Brockton Education Association (association), is the exclusive representative of various groups of Brockton public school employees. The defendant, school committee of Brockton (school committee), is the elected body responsible for the over-all operation and management of the ·Brockton public schools. The association sought a declaratory judgment that, for a seven-month period in 1994-1995, the school committee was in violation of G. L. c. 32B, § 7A, with respect to its rate of contribution toward the indemnity health insurance premiums of school employees. Both parties moved for summary judgment, and summary judgment entered for the

school committee. The association appeals, claiming error in the judge's construction of the statute. We affirm.

The pertinent facts are few and undisputed. During the relevant period, the city of Brockton (city) furnished its employees with an indemnity health insurance plan through a claims trust fund pursuant to G. L. c. 32B, § 3A. The city had also accepted the provisions of G. L. c. 32B, § 7A, a local option statute, which required it to pay at least fifty per cent, and permitted it to contribute more than fifty per cent, of the total monthly premium cost of such insurance. Since the city chose to pay more than fifty per cent of the premiums, it was bound by the mandate of § 7A not to "provide different subsidiary or additional rates to any group or class within that [governmental] unit."

The city's contribution rate for insurance premiums of school employees was fixed by a collective bargaining agreement between the association and the school committee covering the period from 1993 to 1996. In the 1993-1994 school year, the city was required to and did contribute ninety per cent of the premium cost, and the school employees contributed the remaining ten per cent through payroll deductions. The agreement also provided that the city's rate of premium contribution was to decrease to eighty per cent (and the school employees' share to increase concomitantly to twenty per cent) with the first paycheck of the 1994-1995 school year. The new contribution ratio accordingly went into effect for school employees with their first paychecks for the 1994-1995 school year.

At that time, however, three city employee groups were still in negotiations which had begun on July 1, 1994, as to their collective bargaining agreements for the 1994 fiscal year; health insurance premiums for these employees continued at the ninety per cent/ten per cent contribution/deduction ratio previously in effect. After reaching agreement — by the end of November, 1994, for two city employee groups and by March 20, 1995, for the third — the new eighty per cent/twenty per cent contribution/ deduction ratio applied to these employees as well, the new rate being effective as of September 1, 1994. Payments were retroactively deducted for these three employee groups to make up the ten per cent premium adjustment differential. As to each group, then, the school employee group and the three city employee groups belatedly reaching agreement alike, it is undisputed that the city contributed eighty per cent and the

employees twenty per cent of their health insurance premium costs for the very same period of time.

The association maintains that the school committee violated the equal treatment mandate of G. L. c. 32B, § 7A, by proceeding in this fashion because, for a seven-month period of time, notwithstanding subsequent retroactive equalizing adjustments, the city was in fact contributing ninety per cent of the premium cost for some employee groups while contributing only eighty per cent of the premium cost for school employees. Based upon the construction of § 7A which it urges, the association contends that, because the city did not provide on an ongoing monthly basis the same rate to all groups of city employees, it acted in contravention of the statute's strict mandate that all employees be treated equally with respect to employer contributions toward insurance costs. On this view, retroactive adjustment and ultimate parity are without saving effect. Otherwise put, the association claims that the school committee should simply have waited to put the eighty per cent/twenty per cent contribution/ deduction ratio into effect for school employees until such time as all groups of city employees were ready to proceed with the new premium schedule.

We discern nothing in the language of the statute or in the cases construing it which would warrant such a result. General Laws c. 32B, § 7A, as amended through St. 1973, c. 789, § 1, reads:

> "A governmental unit which has accepted the provisions of section ten and which accepts the provisions of this section may, as a part of the total monthly cost of contracts of insurance authorized by sections three and eleven C, with contributions as required by section seven, make payment of a subsidiary or additional rate which may be lower or higher than a premium determined by the governmental unit to be paid by the insured, the combination of which shall result in the governmental unit making payment of more, but not less, than fifty per cent of the total monthly cost for such insurance. No governmental unit, however, shall provide different subsidiary or additional rates to any group or class within that unit."

It is the final sentence of § 7A, added in 1973 as an amendment, that concerns us here. The amendment is a "literal

mandate of equal treatment for all groups of employees with respect to employer contributions toward insurance costs." *Swampscott Educ. Assn.* v. *Swampscott,* 391 Mass. 864, 867 (1984). While the amendment is plain that the rates of contribution must be uniform, it makes no reference to any particular temporal basis for ascertaining whether or when uniformity is achieved. Notwithstanding the statutory silence on this subject, the association insists that the objective of the amendment can only be met if equality of contribution rates is measured on a monthly basis, the same increment of time used elsewhere in the statute to establish premium cost and payment periods.[1]

When interpreting a statute, we do so "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Boston Lic. Bd.* v. *Boston,* 17 Mass. App. Ct. 10, 13 (1983), quoting from *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds,* 382 Mass. 580, 585 (1981). To gain insight into the meaning of the 1973 amendment, then, we must consider its apparently straightforward language in the context of why it came to be.

Under § 7A as it read prior to the 1973 amendment, "the possibility was not expressly foreclosed that the town might undertake to contribute at a higher rate for one employee-group, say firefighters or police officers, than for another, say school teachers. . . . The reasons for the 1973 amendment can be readily discerned. A single rate of deduction for all employees of a municipality, joined with a single rate of contribution by the municipality, presents a simpler and hence a less expensive picture for practical management than the fragmented structure that would result from rates varying among the several employee-groups. The more significant consideration, however,

---

[1]The association argues that there is also a practical reason supporting its interpretation of § 7A. Reduced to its essence, the argument is that there was turnover among the city's employees during the seven-month period at issue with consequent impermissible unequal treatment of individuals who left or entered the system. Passing on the question whether the record is adequate to support this argument, we think it nonetheless without merit. The statute clearly refers to classes or groups of employees and not to individuals; any putative individual benefit or detriment is without bearing upon our construction of the statute.

is the inexpedience . . . of encouraging a competitive scramble in collective bargaining among employee-groups to procure increased municipal contributions to the insurance premiums. This could well lead in the end to a drive for a system to allow bargaining as to the kinds of casualties to be covered. Besides setting up a pressure from contract to contract to escalate the municipal contributions, the process described might result in serious impairment of the basic advantages of the group insurance program which derive from wide distribution of risks and uniform administration." *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706, 711 (1978). The 1973 amendment of § 7A was "a measure that might commend itself to the Legislature as a common sense corrective of a difficulty inherent in the practical operation of that section." *Broderick* v. *Mayor of Boston,* 375 Mass. 98, 103 (1978).

A common sense corrective deserves a common sense interpretation. The amendment was intended to assure a single rate of employer contributions and employee deductions, avoiding competitive scrambling among employee groups for more favorable rates. The Legislature was aware of the language of G. L. c. 32B as a whole and of § 7A in particular when it passed the simply worded 1973 amendment. It elected not to employ a "monthly" time increment for ascertaining rate uniformity although it had previously used that specific increment elsewhere in fixing premium cost and payment periods. The Legislature presumably was equally aware that the phrase "subsidiary or additional rate" appeared in other parts of the statute without modification by a time increment, monthly or otherwise. We need not linger long on these points, however. We do well to tread carefully when urged to imply language that does not appear in a statute, and this is particularly so where the suggested language is unnecessary to effectuate legislative intent.

The legislative purpose of the 1973 amendment is achieved when, as here, there is a single rate of employer contributions and employee deductions for the same period of time. All affected Brockton employee groups received equal rate treatment, with the retroactive equalizing adjustments as to certain employee groups assuring the parity required by the 1973 amendment. We see no reason to impose time constraints the Legislature did not impose, viz., that rate uniformity be measured on a contemporaneous and going-forward basis with

no retroactive parity in excess of one month. The school committee did not violate G. L. c. 32B, § 7A, in proceeding as it did.

*Judgment affirmed.*