MIDDLEBOROUGH GAS & ELECTRIC DEPARTMENT *VS.* TOWN
OF MIDDLEBOROUGH & another.[1]

No. 97-P-1525.

Plymouth. February 22, 1999. - January 11, 2000.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Municipal Corporations,* Collective bargaining, Group insurance. *Middlebor-
ough. Arbitration,* Judicial review, Authority of arbitrator, Collective
bargaining. *Statute,* Construction. *Words,* "Medical benefits."

A Superior Court judge correctly concluded that an article in a collective
bargaining agreement between a municipal gas and electric department and
a union, providing reimbursement for eye examinations and prescription
eyeglasses, was in violation of the provisions of G. L. c. 32B, where such
vision benefits constituted medical benefits under that statute, and where
the municipality did not offer the same benefits to all its union employees.
[430-434]

CIVIL ACTION commenced in the Superior Court Department on
January 19, 1995.

The case was heard by *Patrick F. Brady,* J., on motions for
summary judgment.

*Steven A. Torres* for AFSCME Council 93, AFL-CIO Local
1729.

*Daniel F. Murray* for town of Middleborough.

BECK, J. There are three parties to this dispute: the town of
Middleborough, the Middleborough Gas and Electric Depart-
ment (department), and AFSCME Council 93 (union). The issue
concerns an article of the collective bargaining agreement
between the department and the union. The town claims that the
article violates certain provisions of G. L. c. 32B, the statute
governing municipal health care plans. The town therefore
refused to process payments under the article, which provides
for reimbursement for eye examinations and eyeglasses. An

---

[1]AFSCME Council 93, AFL-CIO Local 1729.

arbitrator ordered the department to abide by the agreement. A Superior Court judge vacated the arbitrator's order, ruling that under G. L. c. 32B, § 7A, the department could not offer these benefits to department employees because the benefits were not available to other town employees. The union appeals from the Superior Court judgment. We affirm.

*Factual and procedural background.* The department is a municipal utility company organized and operated pursuant to G. L. c. 164. Its revenues are deposited in a special account in the town treasury. The town pays the department's bills from this account by the warrant process. See *Middleborough* v. *Middleborough Gas & Elec. Dept.*, 422 Mass. 583, 587 (1996). "[The department's] employees are town employees paid through the town treasurer's office by town-issued checks." *Id.* The collective bargaining agreement, however, refers to the department as the employer, and apparently the department's manager conducts the collective bargaining with the union.

At issue here is art. 36 of the most recent collective bargaining agreement between the department and the union representing department employees. Captioned "eyeglasses," the article provides reimbursement for eye examinations and prescription eyeglasses "based upon the net amount left after payments made under any applicable insurance." Article 36 also provides reimbursement for safety eyeglasses for employees unable to wear department safety glasses and for prescription eyeglasses that are broken or damaged due to a work-related incident.

Article 30 of the same agreement, captioned "health insurance," provides department employees with health insurance through the town's health insurance program. The town's health plan includes eye examination benefits. Discounts for the purchase of "eyewear" are available to employees participating in the town's health insurance plan, but these discounts "are not a covered benefit" under the plan.

It appears that the town had been paying the vision benefits set out in art. 36 from the department's account for three or more years. However, shortly after the collective bargaining agreement at issue here became effective in January, 1994, the town accountant, on advice of the associate general counsel of the State Group Insurance Commission, see G. L. c. 32A, § 3, refused to approve a warrant requesting reimbursement on the

ground that such payments were in violation of G. L. c. 32B. See G. L. c. 32B, §§ 7A, 15.

The union filed a grievance against the department claiming violation of the collective bargaining agreement. After a hearing, an arbitrator concluded that the failure to make the reimbursement violated the parties' collective bargaining agreement. He noted that "whereas the expression 'hospital, surgical, medical, dental and other health care coverage' is mentioned specifically in various parts of [G. L. c. 32B], 'vision' is nowhere to be found." From that observation he concluded that "vision is not included under this statute[,] . . . [and] the parties [were] free to negotiate a separate vision provision." He therefore ordered the department to abide by art. 36 of the collective bargaining agreement.

The department, caught between the town (which was not a party to the arbitration) and the union, filed a complaint in Superior Court against the town and the union seeking a declaration of the department's authority to offer the benefits and review of the arbitration award. The town answered and filed a counterclaim against the department and a cross claim against the union. Upon cross motions for summary judgment, a Superior Court judge allowed the town's motion and denied the motions of the union and the department. He declared that the vision benefits in art. 36 of the collective bargaining agreement are within the scope of the medical coverage included in the various provisions of G. L. c. 32B and that the department did not have authority under either its enabling statute, G. L. c. 164, or the collective bargaining statute, G. L. c. 150E, § 7(*d*), to provide the benefits to department employees in violation of c. 32B. He therefore vacated the arbitrator's award as being in excess of the arbitrator's powers. The union appealed.

*General Laws c. 32B.* "General Laws c. 32B is 'a comprehensive statute empowering municipalities to provide group insurance (medical and certain other coverages) to their employees and their employees' dependents.' " *Connors* v. *Boston*, 430 Mass. 31, 37 (1999), quoting from *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. 706, 710 (1978). It is "a 'local option' statute: it does not take effect until a governmental unit accepts it. . . . Once accepted, however, it provides the exclusive mechanisms by which and to whom the city may provide group health insurance." *Connors* v. *Boston*, 430 Mass. at 37. The "purpose of [c. 32B] is to provide local governments

with a volume of purchasing power sufficient to assure that their employees will receive the highest possible level of benefits at the lowest possible net cost." *Id.* at 39. "Uniformity of coverage (persons and risks) was one mechanism selected by the Legislature to control escalating cost disparities among governmental units." *Id.* at 41. Consistent with this purpose, the last sentence of the first paragraph of c. 32B, § 7A, as inserted by St. 1973, c. 789, § 1, provides: "No governmental unit [which accepts this section] shall provide different subsidiary or additional rates to any group or class within that unit."

*Scope of review of arbitrator's decision.* "A matter submitted to arbitration is subject to a very narrow scope of review. . . . Courts inquire into an arbitration award only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings.' " *Everett* v. *International Bhd. of Police Officers, Locals 633 & 634,* 44 Mass. App. Ct. 671, 676 (1998), quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990). However, "[a]rbitration . . . may not 'award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision.' " *Everett* v. *International Bhd. of Police Officers, Locals 633 & 634,* 44 Mass. App. Ct. at 676 (considering whether an arbitrator's award was contrary to the provisions of G. L. c. 32B, § 16). Under G. L. c. 150E, § 7(*d*), if there is a conflict between a collective bargaining agreement and c. 32B, the statute prevails. See *Broderick* v. *Mayor of Boston,* 375 Mass. 98, 103 (1978).

*Issues on appeal.* On appeal the union argues that the department has authority to bargain with the union on behalf of its employees and that the department was free to negotiate its own terms for vision examinations and eyeglasses because those services were not included in c. 32B, §§ 3 or 15, at the time art. 36 was negotiated. The union also claims that because the payments are reimbursements rather than for insurance premiums they are outside c. 32B, §§ 7A and 15, and therefore permissible. The union also makes a cursory argument that the benefits in question are safety benefits, not health care benefits. The town argues that eye examinations and eyeglasses constitute "medical . . . benefits" included in c. 32B, § 3, and therefore c. 32B, § 7A, prohibits the department from offering department employees additional vision benefits not provided to other town employees.

*Discussion.* As the Superior Court judge succinctly recognized, "[t]he dispute between the parties boils down to a question of statutory interpretation: does the term 'medical coverage' in G. L. c. 32B encompass vision-related insurance?" There is no disagreement that this issue is appropriate for summary judgment. See Mass.R.Civ.P. 56, 365 Mass. 824 (1974). See also *Cassesso* v. *Commissioner of Correction,* 390 Mass. 419, 422 (1983).

The Superior Court's order does not undermine the union's authority to bargain on behalf of its members. However, if the union agrees that members who are department employees will participate in the town's health insurance plan established under c. 32B, then § 7A requires that department employees participate on the same terms as other town employees, see *Connors* v. *Boston,* 430 Mass. at 41, unless the parties establish special terms through a health and welfare trust fund agreement. See G. L. c. 32B, § 15. There is nothing in the record to suggest that there is such an agreement here. (Nor does either party consider whether the department could have established its own separate health plan.)

"The reasons for [§ 7A] can be readily discerned. A single rate of deduction for all employees of a municipality, joined with a single rate of contribution by the municipality, presents a simpler and hence a less expensive picture for practical management than the fragmented structure that would result from rates varying among the several employee-groups. The more significant consideration, however, is the inexpedience (as a Legislature could view it) of encouraging a competitive scramble in collective bargaining among employee-groups to procure increased municipal contributions to the insurance premiums." *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. at 711.

The union attempts to overcome these statutory limits by arguing that the vision benefits were not within c. 32B at the time of the collective bargaining contract. Their argument focuses on a 1996 amendment to G. L. c. 32B, § 15 — St. 1996, c. 288, § 1. This amendment added subsection (*a*) to § 15 and provides as follows:

"Upon acceptance of this subsection by its appropriate public authority and subject to any necessary appropriation, a governmental unit, acting by and through its ap-

propriate public authority, *may offer its employees a policy or policies of group long-term disability insurance, group dental insurance or group vision care insurance.* A governmental unit may contract for such insurance coverage individually or through its membership in a trust or joint purchase group as provided in section twelve of this chapter. A governmental unit may elect to pay any part or none of the premium cost for such insurance coverage for its employees, and may bargain for such insurance coverage collectively." (Emphasis supplied.)

The union argues that the 1996 amendment "add[ed] three types of group insurance to 32B's coverage" and contends that the appearance of the words "vision care" in § 15(*a*), when those words had not previously appeared in either § 15 or any other provision of c. 32B, means that vision care benefits were not available under c. 32B at the time of the collective bargaining contract. We find this argument unpersuasive.

First, the amendment did not add either dental insurance or disability insurance. Dental insurance coverage was added in 1975. See St. 1975, c. 806. Disability insurance has been included in c. 32B as § 11F since 1971. See St. 1971, c. 203, § 2. Instead, the effect of the new subsection was to authorize governmental units to provide three kinds of insurance without making the fifty percent contribution toward the premium that § 7 otherwise requires. See G. L. c. 32B, § 7, first sentence, as appearing in St. 1975, c. 841, § 4 ("[T]here shall be withheld from each payment of . . . [each employee's] compensation . . . fifty per cent of the premium for insurance of the employee . . . and the governmental unit shall contribute the remaining fifty percent"); *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. at 710 ("Watertown undertook . . . to contribute to the premiums at the required level of 50%").

If vision care had been a new benefit not previously available, the 1996 amendment would have added vision care to other sections of c. 32B listing the kinds of group insurance coverage available under the statute. See, e.g., § 1, as appearing in St. 1982, c. 615, § 3 ("The purpose of this chapter is to provide a plan of group life insurance, group accidental death and dismemberment insurance and group general or blanket hospital, surgical, medical, dental and other health insurance").

That is precisely the approach the Legislature adopted in adding dental care to the plans available under c. 32B. See St. 1975, c. 806, amending §§ 1, 2(*i*), 3, 4, 5, 9, 9A, 9B, 9C, 9D, 9E, 9G, 10, 11, and 11B of c. 32B, and inserting § 10A. Not only did the Legislature not include such amendments in the 1996 bill, it did not even add vision care to the original § 15, essentially retained as § 15(*b*), which sets out the scope of c. 32B as including "group life insurance, group accidental death and dismemberment insurance and group general or blanket hospital, surgical, medical, dental, and other health insurance." See G. L. c. 32B, § 15, as appearing in St. 1988, c. 82; G. L. c. 32B, § 15(*b*), as appearing in St. 1996, c. 288, § 1.

The union's argument, which the arbitrator apparently accepted, is essentially a resort to the maxim of statutory interpretation traditionally known as "expressio unius est exclusio alterius," defined in the latest edition of Black's Law Dictionary as "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary 602 (7th ed. 1999) (also addressing the limitations inherent in the maxim). See 2A Singer, Sutherland Statutory Construction § 47.23 (5th ed. 1992). However, there is nothing in c. 32B suggesting a legislative intent to exclude vision benefits. Compare the abortion restrictions in § 3, as amended through St. 1993, c. 110, § 100, prior to the 1996 amendment, St. 1996, c. 366, § 7, that eliminated them. Indeed, the town was already offering eye examination coverage in its health plan established pursuant to c. 32B. Moreover, including vision care is consistent with the purpose of c. 32B to "assure that . . . employees will receive the highest possible level of benefits at the lowest possible cost." *Connors* v. *Boston*, 430 Mass. at 39. The 1996 amendment to § 15 furthered this purpose by increasing the types of insurance options available for negotiation.

Nor are we persuaded by the union's argument that because art. 36 calls for reimbursement, rather than payment toward insurance premiums, the benefits are not covered by c. 32B, §§ 7A and 15, and are therefore permissible. This argument ignores the essential concerns behind c. 32B: to assure that participants receive equal benefits and, by volume membership, to achieve cost control. See *Connors* v. *Boston*, 430 Mass. at 41. Allowing the union to evade the requirements of c. 32B

by providing for direct reimbursement rather than premium contributions would violate the principles at issue here. See *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. at 713-714 & n.15, citing *Kerrigan* v. *Boston*, 361 Mass. 24, 31 n.3 (1972), on the use of arbitration or collective bargaining to evade "a well defined statutory policy."

Finally, the union makes a passing reference to safety, asserting that "the record unequivocally establishes that the eyeglasses benefits contained in Article 36 . . . were negotiated as a safety item." The citation to the record in support of the "unequivocal" point is to a single sentence in the arbitrator's opinion and award: "At the hearing there was testimony that when the eyeglasses provision was negotiated, it was not considered a health insurance benefit, was not paid through insurance but through individual invoices, and the logic behind including eyeglasses in the agreement was for safety and job performance reasons." This single sentence with its reference merely to the arbitrator's summary of the evidence, and no further analysis or citation to authority, does not "rise to the level of acceptable appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975)." *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 664-665 (1997). Moreover, nowhere in its brief does the union argue that we should consider the eyeglasses benefit separately from the eye examinations, which we have already determined are within c. 32B. We therefore do not consider this issue. "[T]he right of a party to have [an appellate] court consider a point entails a duty; that duty is to assist the court with argument and appropriate citation of authority." *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958).

In sum, our analysis of c. 32B, including a "common sense interpretation" of the statute, *Brockton Educ. Assn.* v. *Brockton Sch. Comm.*, 47 Mass. App. Ct. 36, 40 (1999), leads us to conclude that eye examinations and related benefits are medical benefits under c. 32B. The 1996 amendment of § 15 did not signal a change in services covered. Because c. 32B, § 7A, forbids unequal treatment of employees in the provision of health care benefits, the Superior Court judge correctly vacated the arbitrator's award as in excess of the arbitrator's authority under G. L. c. 150C, § 11.

*Judgment affirmed.*