Merrick, J.
This “remand” action was transferred from the Superior Court to the Plymouth District Court in May of 2001, over six years ago.[2] The complaint sought recovery under G.L.c. 93Afor alleged unfair and deceptive practices in the handling of an uninsured motorist benefits claim for an accident that occurred on October 22, 1998, nearly a decade ago. The facts that explain how this case came to be of such antiquity are the same as those that determined its outcome.
The plaintiff, Nicholas Pagliarulo (“Pagliarulo”), has appealed a finding for the defendant, Arbella Mutual Insurance Company (“Arbella”), following a second bench trial. There was conflicting evidence at that trial relative to Arbella’s handling of Pagliarulo’s claim. Pagliarulo’s arguments on this appeal are largely based on the version of events submitted by his witnesses. However, since he claims that the trial court’s finding against him was “clearly erroneous” and that the evidence required an ultimate finding in his favor, we consider the evidence in the light most favorable to Arbella. Secretary of Envtl. Affairs v. Massachusetts Port Auth., 366 Mass. 755, 777 (1975). Contrary to what Pagliarulo appears to be requesting, such appellate review “does not permit the weighing of the evidence anew.” Thurlow v. Shaw’s Supermarkets, Inc., 49 Mass. App. Ct. 175, 177 (2000).
At the time of his 1998 accident, Pagliarulo was operating his father’s Mercury Marquis, which was insured by CGU Insurance (“CGU”). Pagliarulo’s then attorney, David Rodibaugh of the Law Offices of Dane Shulman (“Rodibaugh”), submitted a claim for Personal Injury Protection (“PIP”) and Uninsured Motorist (“UMB”) benefits to CGU. As originally reported by the other operator, Richard Greer (“Greer”), in his accident report to his insurer, “Vehicle No. 1 [Greer’s] was stopped in traffic when it was hit by vehicle No. 2 [plaintiff Pagliarulo’s] from behind.” Under proper *78 ty damage coverage for Pagliarulo’s father’s car, CGU paid a subrogated property damage claim from Metropolitan, Greer’s collision insurance carrier. CGU also made an offer of $10,000.00 on Pagliarulo’s UMB claim before it realized that he had other coverage on his own car in his own name that he had purchased from Arbella.
Pagliarulo should have submitted his uninsured motorist claim to Arbella first. G.Lc. 175, §113L(5) (a). As a result of his failure to do so, Arbella had no notice of Pagliarulo’s UMB claim until it received a claim letter from Rodibaugh on July 27, 2000, more than a year and a half after the accident. The claim was assigned to Arbella’s claim representative, Jacqueline Suvluo (“Suvluo”). Such a late notice is of some concern to an insurer because it permits the claimant to avoid a request for an independent medical examination (“IME”)[3] during the period of delay. Suvluo attempted by continuing letters and telephone calls to obtain medical records and bills from Rodibaugh, Pagliarulo’s then counsel. Suvluo repeatedly informed Rodibaugh that the bills and records stated in his correspondence to have been enclosed were not, in fact, enclosed. In response to each of her requests, Rodibaugh said, “I’m sorry. We’ll send them. I thought we sent them.” He never did. Instead, sometime in September of 2000, Rodibaugh sent Suvluo a medical records authorization form. During this same period of time, Pagliarulo, who was clearly represented by counsel, repeatedly tried to engage Suvluo and others at Arbella in direct discussions with him about a settlement. The trial judge could have reasonably inferred, therefore, that Rodibaugh was “stonewalling” on medical records requests at the same time that Pagliarulo was aggressively demanding a settlement.
After Rodibaugh repeatedly failed to submit the necessary documents to Arbella, Suvluo finally sent the medical records authorization on November 10,2000 to CGU, the insurance carrier to which medical records and bills had reportedly been submitted previously by Rodibaugh. When CGU did not send the records, Suvluo called CGU in December of 2000 to repeat the request. Again, however, she did not receive the records. Arbella’s documentation of its requests is in its computer files. Having received no records from either Rodibaugh or CGU, Suvluo was finally forced in January of 2001 to send the medical records authorization directly to the medical providers. Dr. Robert DiTullio (“DiTullio”), the treating physician, would not provide documents until Arbella paid him $75.00 for a copy (which it did).
In the absence of medical records and bills, Suvluo would not make an offer or proceed to arbitration. Pagliarulo commenced this G.Lc. 93A action in May, 2001.[4] Because the claim had been placed in suit, and because DiTullio’s medical records and bills were apparently all that she was going to receive, Suvluo valued Pagliarulo’s claim at $19,000.00, and made an offer in that amount together with an offer to arbitrate on June 5,2001. Suvluo was not asked at trial how she had arrived at that figure. She did testify that she was not affected by her (erroneous) belief that the applicable policy limit was $25,000.00. Nor was she aware that CGU had valued the claim at only $10,000.00. The demand from the Law Offices of Dane Shulman *79 had been for $100,000.00, which it reduced to $90,000.00.
Although Pagliarulo filed this G.Lc. 93A action in Plymouth Superior Court in 2001, he waited until February 6,2002 to file an action for appointment of an arbitrator,[5] which he brought in Norfolk Superior Court. Arbella’s defense counsel raised a question of liability when he obtained the original report by Greer to his insurer, Metropolitan, of a “rear ender” accident. An arbitrator in the subrogation claim of Metropolitan against CGU had found Pagliarulo, not Greer, responsible for the accident.[6] Through discovery, Arbella’s counsel also learned that Pagliarulo had been on a full disability retirement from the State Police for ten years for back injuries he had sustained in a prior automobile accident that were similar to those of which he complained after the 1998 accident. In any event, despite Greer’s failure to have ever mentioned it in his original accident report or elsewhere, Greer claimed for the first time during the arbitration proceeding that there was a third and unknown vehicle involved in the accident that had forced Pagliarulo to strike the rear of Greer’s vehicle. Although there was conflicting evidence on this point, Suvluo testified that she had attempted, unsuccessfully, to contact Greer, and had never heard his modified or expanded version of the accident. Her supervisor testified that she did not think Greer’s lack of response was unusual, given that the claim was already two years old when reported. The arbitrator made an ultimate award in favor of Pagliarulo on his UMB claim against Arbella in the amount of $55,316.50, which has been paid.
A bench trial of Pagliarulo’s G.L.c. 93A claim in this action began in October, 2004, and was continued to nonconsecutive dates over time. The judge was forced to declare a mistrial on June 10, 2005 for reasons attributable entirely to Pagliarulo or his counsel.[7] A second judge conducted a retrial of the action over several days in late 2005, and found for Arbella.
1. Pagliarulo’s principal contention on this appeal is that the finding against him on his G.L.c. 93A claim was clearly erroneous because Arbella did not make an acceptable offer of settlement when liability was reasonably clear. His argument on that point, however, depends on a version of the facts submitted by his witnesses and neither required by the evidence, nor found by the trial judge. “Resolution of a G.L.c. 93A claim, including the issue of bad faith, depends on a factual determination of the defendant’s knowledge and intent. ...We will not disturb a judge’s ultimate finding in a c. 93A claim unless the finding is clearly erroneous or inconsistent with the relevant legal standards” (citations omitted). O’Leary-Alison v. Metropolitan Prop. & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001).
*80 The fact that Pagliarulo ultimately obtained an arbitration award in excess of $53,000.00 is not dispositive of his G.L.c. 93A claim. Resolution of a dispute such as this, concerning the alleged failure of an insurer to settle an insurance claim fairly and equitably, depends on a factual determination of the insurer’s knowledge and intent at the time it was handling the claim. Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass. App. Ct. 723, 726 (1979). “An insurer’s good faith, but mistaken, valuation of damages does not constitute a violation of c. 176D.” O’Leary-Alison, supra at 218 ($20,000.00 settlement offer made in good faith, despite damages award of $125,000.00). See Parker v. D’Avolio, 40 Mass. App. Ct. 394, 395 (1996) (defendants’ offer of $25.00 to plaintiff who subsequently obtained $1,250,000.00 verdict did not violate G.L.c. 93A where causal connection was at issue). Nothing in the record in this case mandates a finding that the information Arbella had available to it required an offer in excess of $19,000.00. As noted, another insurer (CGU) had valued Pagliarulo’s claim at only $10,000.00; the back injury Pagliarulo claimed was similar to a pre-existing one for which he had already obtained a disability retirement; and the change in Greer’s account of the accident did not surface until after Suvluo made the $19,000.00 offer.
2. Pagliarulo also argues that “[t]he Trial Court’s failure to find that Arbella’s refusal to arbitrate unless the plaintiff dismissed his chapter 93A claim as [sic] a chapter 93A violation was error.” The trial judge would not have been required to accept the testimony of Pagliarulo’s witnesses on this point even if it had been uncontrovered. Calderone v. Wright, 360 Mass. 174, 176 (1971); Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. But Arbella’s claims employees recalled no such condition, and stated that they tried to delay arbitration because of the absence of necessary medical records. It should be noted that Pagliarulo was always free to obtain arbitration in exactly the way he ultimately did — by filing a superior court action for the appointment of an arbitrator. Indicative of Pagliarulo’s state of mind are the facts that he brought this action under G.L.c. 93A in May of 2001 for alleged unfair settlement of his claim, but did not seek a determination of that claim by court arbitration until February of 2002.
Pagliarulo next argues that it was an unfair practice for Arbella to oppose his motion to consolidate the two actions. It was Pagliarulo, however, who elected to file actions in two different counties. The underlying case had already been submitted to arbitration, and the consolidation motion was denied by a superior court judge. Arbella certainly had no obligation to assent to the consolidation of the two cases.
There is also no merit in Pagliarulo’s contention that Arbella was required to agree to submit this G.L.c. 93A claim to arbitration as well. Nothing in the arbitration requirement for uninsured motorist coverage claims supports such an interpretation. Beals v. Commercial Union Ins. Co., 61 Mass. App. Ct. 189, 194 (2004). Further, any determination of the scope of the arbitration clause in Pagliarulo’s particular policy form would have required the submission of the specific policy language to the court. See Gilbert v. Hanover Ins. Co., 35 Mass. App. Ct. 683 (1993). Pagliarulo did not introduce the policy form applicable here into evidence.
Finally, Pagliarulo’s arbitration-related complaints were not included in his G.L.c. 93A demand letter. “Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief.” Clegg v. Butler, 424 Mass. 413, 423 (1997). While a judge, if he found such activity to have occurred, is not *81 barred from considering such actions in evaluating other violations of G.L.c. 93A, “[s]eparate relief on actions not so mentioned [in the demand letter] is foreclosed as a matter of law.”[8] Id.
3. Pagliarulo also has a number of discovery-related complaints. He argues first that the trial judge should have drawn an inference against Arbella for a failure to provide documents ordered produced during discovery. A sanction for failure to comply with a court order regarding discovery must be obtained by motion under Mass. R. Civ. R, Rule 37(d), upon seven days’ notice. EM. Lauriat, S.E. McChesney, W.H. Gordon, A.A. Rainer, Discovery §9.15, at 694 (2001) (discussing procedure in cases filed prior to implementation of the civil “one-trial” system). The docket and the record appendix do not reflect, however, that any pertinent order was made on any such motion. Moreover, the gist of the hundreds of pages of oral argument in the record is Pagliarulo’s simple claim that materials were submitted to Arbella in greater number and on earlier dates than Arbella says they were. The fact that Arbella does not have records confirming Pagliarulo’s contention is, to Pagliarulo at least, proof that records have been concealed or destroyed. Neither the trial judge, nor any of the earlier motion judges, was required to accept Pagliarulo’s conjecture.
Pagliarulo also cites some case law in his appellate brief dealing with the issue of spoliation of evidence. Although there is endless rehashing by counsel of prior discovery disputes, the word “spoliation” appears nowhere in the record. Pagliarulo did not file any motion based on the spoliation doctrine demonstrating that evidence had, in fact, been altered or destroyed, and that the loss of such evidence was the result of the intentional or bad faith conduct of Arbella. See Natty v. Volkswagen of America, Inc., 405 Mass. 191, 197-198 (1989). In any event, there is no evidence in the record that would have required a finding that there had been any spoliation of evidence.
Based, again, on alleged circumstances not supported by the record, Pagliarulo also argues that an adverse inference should have been drawn against Arbella for its alleged failure to produce documents from its file that he subpoenaed to trial. This assertion was raised by Pagliarulo’s request for ruling no. 31,[9] which stated:
Under Massachusetts law, the failure to produce evidence, or the loss or destruction of that evidence permits an inference by the fact finder that the *82 contents or the condition of such evidence would have proven unfavorable to the defendant.
This is certainly a correct statement of law as far as it goes, and it would be error, generally, to deny a request for that proposition without qualification. But as the rule is limited to evidence that is required to be produced, there is nothing in the record to suggest that requested ruling no. 31 had any application to this case. The only trial subpoena duces tecum to Arbella in the record is Exhibit 19 calling upon it to bring records to the original trial on October 27, 2004, which ended in a mistrial on June 10,2005. We can find no subpoena for the second trial in our search of the record.[10] Indeed, at the close of the evidence, Pagliarulo’s attorney admitted that he did not have the return of service for a subpoena duces tecum on Arbella for this trial, and requested additional time to submit it. That request was denied. There is no evidence, therefore, of a subpoena that would have required Arbella to produce materials at trial, and no error in the trial judge’s inaction upon inapplicable request for ruling no. 31.
4. Finally, Pagliarulo argues that a superior court case, Mongeon v. Arbella Mutual Insurance Co., affirmed in an unpublished opinion by the Appeals Court in 2004, should “apply” in this case. Mongeon dealt with an unrelated claim under similar insurance coverage in which the trial court found that Arbella had violated G.L.c. 93A. The trial judge in the case before us ruled that the legal principles applied in Mongeon were correct, but that the case had no precedential or preclusive effect on this case. Pagliarulo’s brief on this point cites nothing but the Mongeon opinion itself, and does not “rise to the level of acceptable appellate argument.” Adoption of Kimberly, 414 Mass. 526, 536-537 (1993). See also Middleborough Gas & Elec. Dep’t v. Middleborough, 48 Mass. App. Ct. 427, 434 (2000).
Judgment affirmed.
So ordered.

 The case is, thus, governed by District Court Standing Order 1-88 and the “removal/retransfer” system in effect prior to the enactment of St. 2004, c. 252.

 It may be noted that Pagliarulo did undergo an IME for CGU. Its offer on Pagliarulo’s claim was $10,000.00.

 The action is so described by the parties. The appendix does not include a copy of the complaint.

 Again, the action is so described by the parties. The appendix does not include a copy of the complaint.

 This finding has no preclusive effect as between Pagliarulo and Arbella, but it certainly could have been considered in the balance by Arbella when it assessed liability after obtaining material in discovery.

 These included (1) a dispute between Pagliarulo and an attorney from the Law Offices of Dane Shulman who had started the trial and against whom Pagliarulo had filed an excoriating and lengthy pro se motion while still insisting he was represented by that attorney; and (2) the departure from Attorney Shulman’s firm of the two attorneys who had been handling the case.

 The same is true with Pagliarulo’s complaint that a liability defense to his claim was not asserted until arbitration.

 The trial judge declined to rule on the last nine of Pagliarulo’s thirty-one requests for rulings on the ground that they were excessive in number. Where the number of requests filed by a party is in fact “palpably in excess of the number legitimately needed,” it is within the trial judge’s discretion either “to order them stricken from the files, or to require a party to reduce them to a reasonable number or risk the loss of any rights under them.” Stella v. Curtis, 348 Mass. 458, 460 (1965), quoting Hogan v. Coleman, 326 Mass. 770, 773 (1951). The better course for a judge confronted with an excessive number of requests is to instruct counsel to reduce the number of requests, rather than to strike them all or an arbitrarily selected group of them. Chiappetta v. Lyons, 1999 Mass. App. Div. 276, 278 (court’s order striking all thirty-five requests filed was “unduly harsh and constituted an abuse of discretion”).

 This task was greatly complicated by the fact that “ [t] he record appendix in this appeal consisted in part of [twenty-three] exhibits listed only by their numbers in the table of contents. This type of table of contents is next to useless and did not comply with the spirit of [Dist./Mun. Cts. R. A D. A.] 18(d).” American Motorists Ins. Co. v. American Ins. Co., 14 Mass. App. Ct. 263, 267 n.5 (1982).