RENEE T. GILBERT & another[1] *vs.* THE HANOVER
INSURANCE COMPANY.[2]

No. 92-P-964.

Worcester. September 22, 1993. - December 29, 1993.

Present: BROWN. FINE. & LAURENCE. JJ.

*Arbitration*, Insurance. *Insurance*, Motor vehicle insurance, Underinsured
motorist, Arbitration.

Parties injured in an automobile accident were entitled, under the author-
ity of *Aetna Cas. & Sur. Co.* v. *Faris*, 27 Mass. App. Ct. 194 (1989),
to seek arbitration of a claim against their own insurer for underin-
surance benefits before exhausting their claims against the alleged tort-
feasor, where any changes in underinsured automobile coverage set
forth in St. 1988, c. 273, §§ 46 and 47, and changes in the wording of
underinsurance policy terms that appeared in the Fifth Edition Stan-
dard Massachusetts Automobile Insurance Policy did not affect the pol-
icy's arbitration provision, which did not expressly require exhaustion.
[685-687]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 16, 1991.

A motion to confirm an arbitrator's award was heard by
*Charles J. Hely*, J., and entry of judgment was ordered by
him.

*Craig D. Murphy* for the defendant.
*Rickie T. Weiner* for the plaintiffs.
*Stephen M. A. Woodworth & Peter E. Heppner* for Aetna
Casualty and Surety Company & others, amici curiae, sub-
mitted a brief.

---

[1]Michel G. Gilbert.
[2]We acknowledge the amicus curiae brief filed on behalf of fourteen
insurance companies providing automobile liability insurance in
Massachusetts.

FINE, J. In *Aetna Cas. & Sur. Co.* v. *Faris*, 27 Mass. App. Ct. 194 (1989), we decided that, under the standard automobile insurance policy approved by the Commissioner of Insurance for use in 1981, a party injured in an automobile accident had the right to arbitration of his claim against his insurance company for underinsurance benefits before all claims he might have had against any alleged tortfeasors were settled or judicially resolved. On the basis of intervening changes in the wording of the standard automobile policy and in the governing statutes, we are asked in this appeal to rule that the *Faris* interpretation does not apply to the later policies. We decline so to rule.

In 1990, the Gilberts carried automobile insurance with The Hanover Insurance Company (Hanover). Their policy, on the form approved by the Commissioner of Insurance as the Fifth Edition Standard Massachusetts Automobile Insurance Policy, provided them with underinsurance coverage up to $100,000 per person or $300,000 per accident. On May 2, 1990, Renee T. Gilbert suffered injuries when the vehicle she was driving was struck in the rear by a vehicle owned and operated by an individual whose liability insurance with Royal Insurance Co. (Royal) provided coverage only in the amount of $50,000 per person or $100,000 per accident.

Without having been paid anything by Royal, Renee T. Gilbert, along with her husband, who was seeking compensation for loss of consortium, brought an action in the Superior Court against Hanover seeking the appointment of an arbitrator to resolve their dispute with Hanover with respect to underinsurance benefits. Hanover responded by moving to dismiss the complaint, asserting, among other things, that the Gilberts' failure to collect whatever insurance proceeds were available from Royal barred them at that time from enforcing arbitration of their underinsurance claim. The judge denied Hanover's motion to dismiss. He stated that, in his view, the new policy language on which Hanover relied was "not a sufficient basis for interpreting the arbitration procedure in a manner inconsistent with the *Faris* rule." Arbitration proceeded, and an award was made in Renee T.

Gilbert's favor in the amount of $21,000. Hanover appeals from the judgment confirming the arbitration award.

Hanover is correct in asserting that there are distinctions between the instant case and *Faris*. The policy provision on which the *Faris* decision was based dealt with both uninsurance and underinsurance benefits, and both forms of coverage, within certain limits, were compulsory. G. L. c. 175, § 113L, as appearing in St. 1980, c. 532, § 1. Effective January 1, 1989, underinsurance coverage was no longer mandatory, but the insured was given the right to elect it. St. 1988, c. 273, §§ 46 and 47. We do not think the statutory change requires a result different from that reached in *Faris*. We assume that, by requiring insurance companies at least to offer underinsurance coverage, the Legislature remained concerned with protecting accident victims, among other things, against "the possibility of unreasonably delayed insurance settlements." *Aetna Cas. & Sur. Co.* v. *Faris*, 27 Mass. App. Ct. at 197.

The Fifth Edition policy, in issue in this case, has a separate provision covering underinsurance benefits, which the Gilberts elected to purchase. The provision includes the following new language on which Hanover primarily relies:

> "When an auto is underinsured, we will pay any unpaid damages up to the difference between the total amount *collected* from the automobile bodily injury liability insurance covering the owner and operator of the auto and the limits shown for this Part on your Coverage Selections Page" (emphasis supplied).

We agree that the use of the word "collected" in the provision tends to suggest that an insured must exhaust whatever insurance is available under an alleged tortfeasor's policy before resorting to his own underinsurance coverage.[3] On the other hand, the arbitration clause included in the underin-

---

[3]Alternatively, the language is capable of being read not as requiring exhaustion but as stating the measure of recovery in the event that a tortfeasor's insurer paid damages to an accident victim before he sought arbitration, or as a guide to the amount that an arbitrator should award.

surance provision in the Fifth Edition is identical to the arbitration clause in both the uninsurance section of that policy and the combined uninsurance and underinsurance section of the earlier policy in issue in *Faris*. According to the language in the arbitration provision, if the insured and the insurance company are unable to agree, the question whether the alleged tortfeasor is liable to the insured, as well as the amount of the insured's damages, is to be decided by arbitration. If, as Hanover contends, the Fifth Edition policy requires prior judicial resolution or settlement of any claim against an alleged tortfeasor the clause granting the right to arbitrate liability issues would have little meaning.

The conflicting suggestions in the language of these provisions create a lack of clarity which requires us to interpret the policy. In the circumstances, we are required to determine whether the fair meaning of the policy requires a result different from that reached in *Faris*.[4] In *Faris*, we pointed out that "[t]here [was] nothing in the underinsurance statute or the policy terms expressly requiring exhaustion of claims against alleged tortfeasors prior to arbitration." *Id*. at 196. There is still nothing in the policy terms clearly expressing an exhaustion requirement, although language to that effect, that is, to change the *Faris* rule as to future policies, could easily have been used.[5]

We also relied in *Faris*, in part, on the advantages of speed, convenience, and low cost inherent in the resolution of disputes through arbitration. *Id*. at 197. Both before and after *Faris*, arbitration to determine both liability and damage issues with respect to uninsurance and underinsurance claims has been in wide use in Massachusetts and elsewhere. See

---

[4]As the Commissioner of Insurance was required to approve any automobile policy, we do not necessarily resolve the ambiguities in favor of the insured. Compare *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984); *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 387 (1988).

[5]The Gilberts offered a letter from counsel to the Commissioner of Insurance favoring their interpretation. The trial judge did not rely on that letter in reaching his conclusion, nor do we. See *Galvin* v. *Amica Mut. Ins. Co.*, 11 Mass. App. Ct. 457, 462 (1981).

*Employers' Fire Ins. Co.* v. *Garney*, 348 Mass. 627, 632 (1965); *Allstate Ins. Co.* v. *Harris*, 26 Mass. App. Ct. 1017, 1019 (1989); *Allstate Ins. Co.* v. *MacNeil*, 32 Mass. App. Ct. 227, 230 (1992); 2 Widiss, Uninsured and Underinsured Motorist Insurance § 24.6 (2d ed. 1987), and cases cited. The policy considerations we relied on in *Faris* still favor enforcement of the agreement to arbitrate early enough in the claims process to assure that settlement of an underinsurance claim is not unreasonably delayed.[6] In light of those policy considerations and the absence of clear language changing a procedure well established in the automobile insurance industry so as to require exhaustion of other claims prior to arbitration, we decline to rule that the *Faris* precedent is inapplicable to the Fifth Edition Standard Massachusetts Automobile Insurance Policy.

*Judgment affirmed.*

---

[6]In the amicus brief, the insurance companies contend that the public interest favors interpreting the policy language to require exhaustion. The companies claim that arbitrators generally award higher damages to accident victims than do judges and juries, and that the result is increased premiums for consumers. We have been shown no evidence to support that claim, however, and we are not aware of any logical reason why that should be so.