NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-861                                    Appeals Court


HEATHER CHAMBERLAND  vs.  ARBELLA MUTUAL INSURANCE COMPANY.


No. 16-P-861.

Bristol.    February 1, 2017. - June 9, 2017.

Present: Carhart, Massing, & Henry, JJ.[1]


Insurance, Underinsured motorist, Arbitration. Contract,
      Insurance, Arbitration. Waiver. Collateral Estoppel.
      Judgment, Preclusive effect. Arbitration. Practice,
      Civil, Summary judgment, Waiver.



      Civil action commenced in the Superior Court Department on
March 4, 2015.

      The case was heard by Robert J. Kane, J., on motions for
summary judgment.


      Peter E. Heppner (Andrew Hart Lynch also present) for the
defendant.
      Ronald J. Resmini for the plaintiff.


      HENRY, J.  This case highlights the intricacies of the

framework for underinsured motorist claims in Massachusetts,

which provides that the insured and the insurer must either

_____

      [1] Justice Carhart participated in the deliberation on this
case prior to his retirement.

agree on the resolution of the claim or arbitrate.  The plaintiff, Heather Chamberland, pursued a lengthy civil action against the other driver involved in the underlying accident and obtained a large judgment and eventually a settlement in the amount of that driver's policy limits.  Her underinsurance carrier, Arbella Mutual Insurance Company, was not a party to that action, though it consented to the settlement.  Chamberland then sought underinsured motorist coverage from Arbella, which invoked arbitration.  On cross motions for summary judgment, a Superior Court judge held that Arbella's invocation of arbitration was untimely, and thus Arbella had waived its right to arbitrate.  The motion judge further held that, as a result of the damages award that Chamberland had secured against the other driver at trial, Arbella was collaterally estopped from contesting issues of liability and damages in connection with Chamberland's underinsurance claim.  Arbella appealed.  We reverse because, notwithstanding the significant amount of time that passed before Arbella's demand for arbitration, Arbella did not act inconsistently with its statutory and policy-based right to arbitrate.  As such, there is no basis for a finding of waiver of that right.

Background.  The following undisputed facts are drawn from the summary judgment record.  On July 16, 2007, Chamberland was injured in an accident while operating a motor vehicle insured

under a policy issued by Arbella. The other vehicle involved in the accident was operated by Dylon Maiorano and insured under a policy issued by Liberty Mutual Insurance Company. Arbella was notified of the accident, and by October 3, 2007, confirmed in writing that Chamberland's underinsurance (part 12) coverage limits under the Arbella policy were $250,000 per person and $500,000 per accident.

Chamberland sued Maiorano in a case that ultimately involved two jury trials and multiple appeals. Chamberland prevailed in the second trial; the jury concluded that the accident was caused solely by Maiorano's negligence and that Chamberland was entitled to $231,565 in damages.[2] With statutory interest, Chamberland's judgment totaled $340,557.02. Maiorano appealed. Arbella was not a party to this action.

While the appeal was pending, Chamberland, with Arbella's consent, reached a settlement with Maiorano and Liberty Mutual, pursuant to which Liberty Mutual agreed to pay her the full $100,000 in bodily injury coverage available under Maiorano's policy. In exchange, Chamberland released Maiorano and Liberty Mutual from all claims arising out of the accident. She further

---

[2] The first jury returned a verdict finding that Chamberland's damages amounted to $5,280. However, the jury also found that Chamberland was fifty percent negligent, and the award was reduced accordingly. After adjustment for the PIP setoff, the damage award was reduced to $0. Chamberland then successfully pursued a motion for a new trial, however, and the matter proceeded to trial for a second time.

acknowledged that Maiorano, by entering into the settlement, did not admit liability for the accident, and, in fact, continued to deny the same. On May 2, 2014, Chamberland and Maiorano filed a stipulation of dismissal of the case with prejudice.

During the course of Chamberland's action against Maiorano, Arbella requested that it be kept apprised of the matter so it could determine if an underinsurance claim was forthcoming. The parties did not correspond again until more than three years later when, on December 31, 2013, Chamberland's attorney notified Arbella of the $340,557.02 judgment against Maiorano. Chamberland claimed that the issues of liability and damages had been resolved by that judgment and demanded payment of the balance of the judgment, $240,557.02, pursuant to the underinsurance coverage provision in the Arbella policy. Arbella refused, stating that it was not bound by the judgment against Maiorano and asserting that it was entitled to resolve issues of liability and damages through arbitration.

Chamberland subsequently initiated this action (1) seeking a declaration that she is entitled to the "remaining" underinsurance coverage limits of the Arbella policy, and (2) asserting that Arbella had engaged in unfair settlement practices in violation of G. L. c. 93A and G. L. c. 176D. Arbella denied Chamberland's claims and asserted a counterclaim for court appointment of an arbitrator. The parties immediately

proceeded to summary judgment. The motion judge dismissed Arbella's counterclaim, granted a required offset of $100,000 for the bodily injury coverage that Chamberland recovered under Maiorano's automobile insurance policy, and declared Arbella liable to Chamberland for $131,565 in underinsurance coverage, the balance (after the offset) of the jury's damages award in the second trial.[3] Arbella appealed.

Discussion. Massachusetts automobile insurance policies must comply with all applicable statutory provisions and be in a form approved by the Commissioner of Insurance (Commissioner). See G. L. c. 175, §§ 2B, 113A. Statutorily, resolution of a claim for uninsured motorist benefits -- both liability and damages -- "shall be made by agreement between the insured . . . and the insurer or, if they fail to agree, by arbitration." G. L. c. 175, § 111D. The underinsurance section of the Arbella policy, part 12,[4] closely tracks the statute.[5]

---

[3] The judge made no explicit ruling on Chamberland's unfair settlement practices claim under G. L. c. 93A and G. L. c. 176D. The docket shows that after the summary judgment entered, Chamberland filed a request for postjudgment interest "and in [c]onsideration with" G. L. c. 93A and G. L. c. 176D, which the judge indorsed as "No Action Taken. The Court defers until appeal is resolved." See G. L. c. 251, § 18(a)(1) (order denying motion to compel arbitration is immediately appealable).

[4] The Arbella policy provides:

"The determination as to whether an injured person is legally entitled to recover damages from the legally responsible owner or operator will be by agreement between

To begin, we briefly review how an insured may make a claim for underinsurance coverage. The insured can pursue the alleged tortfeasor for a judgment or, with the consent of her insurance company, a settlement, and then seek payment from the insurer providing underinsured motorist coverage.[6] Furukawa v. Arbella Mut. Ins. Co., 59 Mass. App. Ct. 142, 143-146 (2003). The insurer's consent to the settlement does not preclude it from contesting the liability of an alleged tortfeasor or the amount of damages. Ibid. By the same token, the insured can lose her claim against the alleged tortfeasor and still pursue underinsured motorist coverage from her own insurer because the policy language provides for agreement or arbitration rather

_____

us and the injured person. The amount of damages, if any, will be determined in the same way. Arbitration will be used if no agreement can be reached."

[5] The Arbella policy at issue here was in a form consistent with the seventh edition of the Massachusetts automobile insurance policy approved by the Commissioner.

[6] Part 12 of the Arbella policy includes the following provision:

"If an injured person settles a claim as a result of an accident covered under this Part, we will pay that person only if the claim was settled with our consent."

See MacInnis v. Aetna Life & Cas. Co., 403 Mass. 220, 222-223 (1988) (a consent-to-settlement clause in the underinsurance section of a policy is valid, although the insurer must prove that it suffered material prejudice to deny coverage on that basis).

than judicial determination of coverage. Allstate Ins. Co. v. MacNeil, 32 Mass. App. Ct. 227, 228 & n.2, 230 (1992).

Alternatively, the insured can proceed on parallel tracks, pursuing the alleged tortfeasor while simultaneously demanding underinsurance coverage from her own carrier. See Aetna Cas. & Sur. Co. v. Faris, 27 Mass. App. Ct. 194, 196-197 (1989) ("There is nothing in the underinsurance statute or the policy terms expressly requiring exhaustion of claims against alleged tortfeasors prior to arbitration"; such a parallel option protects insureds "from the possibility of unreasonably delayed insurance settlements"); Gilbert v. Hanover Ins. Co., 35 Mass. App. Ct. 683, 687 (1993) (applying Faris to a subsequent edition automobile insurance policy approved by the Commissioner). With this background, we address Arbella's claims on appeal.

1. Waiver of arbitration. "An appellate court, reviewing a judge's finding that a party has waived arbitration, must determine whether . . . the judge abused his discretion." Martin v. Norwood, 395 Mass. 159, 162 (1985). This requires us to determine whether the motion judge's decision resulted from "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, it is undisputed that Arbella did not explicitly waive its right to arbitrate Chamberland's underinsurance claim. Accordingly, "[t]he essential question is whether, under the totality of the circumstances, [Arbella] acted inconsistently with the arbitration right." Martin, 395 Mass. at 162 (quotation omitted). Upon review of the undisputed facts in the record, we conclude that the motion judge's determination that Arbella waived its arbitration right amounted to an abuse of discretion.

As the motion judge noted in his decision, Arbella and Chamberland each had the option of demanding arbitration at any time, assuming they were unable to reach agreement on liability and/or damages, and did not need to wait to do so until Chamberland had exhausted her rights against Maiorano. Faris, 27 Mass. App. Ct. at 197. The motion judge took Faris one step further, however, concluding that, because "both [Arbella] and [Chamberland] agreeably waited until the passage of two jury trials, [they both] forfeited the arbitration remedy and must by their omissions be deemed to have consented to resolution by the judicial determinations arrived at in the second trial." There is nothing in Faris, however, to suggest that an insurer (or insured) acts untimely by waiting until the conclusion of an insured's action against the alleged tortfeasor to demand arbitration on such a claim. Quite the contrary. Absent other

acts inconsistent with its arbitration right, therefore, Arbella did not waive that right merely by waiting to assert it until Chamberland's action against Maiorano came to a conclusion.

The motion judge here placed great reliance on the decision in Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772 (1989), where the defendant was held to have waived a contractual arbitration right by not asserting it until after the defendant had engaged in litigation with the plaintiff for two and one-half years, including a hearing before a master, thus "wast[ing] scarce judicial time and effort and hamper[ing] judges' authority to control the course of proceedings before them." Id. at 778 (quotation omitted). The motion judge here was of the opinion that Arbella had similarly wasted judicial time and effort by taking a "wait and see" approach while Chamberland's action against Maiorano played out, only to demand arbitration when the second jury trial ended favorably for Chamberland on the issues of liability and damages.

However, unlike the insurer in Home Gas Corp., Arbella was not a party to the litigation between Chamberland and Maiorano. As it was a stranger to that action, Arbella cannot fairly be charged with wasting judicial time and effort merely because it waited for Chamberland's action against Maiorano to conclude.[7]

---

[7] The motion judge noted that Arbella could have moved to intervene in the action against Maiorano, pursuant to

As soon as Chamberland finalized her settlement with Maiorano and Liberty Mutual and made a demand for the underinsurance limits of the Arbella policy, Arbella demanded arbitration. When Chamberland responded by filing this action, Arbella immediately moved, by way of counterclaim, for the appointment of an arbitrator. In short, Arbella's actions were anything but inconsistent with its arbitration right. As the Faris decision makes clear, Arbella was within its contractual rights to follow the course that it did. As such, Arbella did not act with undue delay and cannot be penalized for doing what it was entitled to do. Nor can Chamberland claim to have been prejudiced. Indeed, as noted above, she herself could have demanded arbitration at any time.

2. Collateral estoppel. The motion judge also held that Arbella was precluded by the judgment against Maiorano from contesting issues of liability and damages in connection with Chamberland's underinsurance claim. Where, as here, there is a specific provision in the policy requiring arbitration to resolve disputed issues of liability and damages for purposes of underinsurance, preclusion does not lie. See Allstate Ins. Co. v. MacNeil, 32 Mass. App. Ct. at 228 n.2. In MacNeil, it was

---

Mass.R.Civ.P. 24(b), 365 Mass. 769 (1974). Even if that is true, which we need not decide, Arbella was not obligated to do so. As already noted, Arbella had a contractual right to arbitrate disputes of liability and damages with respect to Chamberland's underinsurance claim.

the insurer, Allstate, that sought to preclude its insured, MacNeil, from pursuing arbitration of his underinsurance claim after judgment entered against MacNeil finding that the alleged tortfeasor was not liable for the accident.  Id. at 228.  The court held that, "[w]ere it not for the specific provisions of the policy [requiring arbitration to resolve disputed issues of liability and damages for purposes of underinsurance], we would agree with the conclusion that the principles of (issue preclusion) apply and that MacNeil is bound, even though Allstate was not a party in the first action.[8] . . . [However,] [s]ince the [policy] called for agreement of the parties as to whether MacNeil was legally entitled to recover from [the alleged tortfeasor], and, failing agreement, arbitration, Allstate is required to arbitrate."  Id. at 228, 230.  The analysis in MacNeil applies equally to the facts of this case.  It was thus error to deny Arbella's cross motion for summary judgment on its counterclaim seeking appointment of an arbitrator.

Conclusion.  The summary judgment entered in favor of Chamberland is reversed, and an order shall enter allowing

---

[8] Notably, Allstate had rejected MacNeil's request that it assent to being bound by any decision reached in the action against the alleged tortfeasor.  MacNeil, 32 Mass. App. Ct. at 229.  If Allstate had assented, issue preclusion would have applied because the policy, like the Arbella policy here, allows the insurer and insured to agree to resolve issues without resorting to arbitration.  Id. at 230.

Arbella's cross motion for summary judgment on its counterclaim requesting appointment of an arbitrator.  The matter is remanded to the trial court for appointment of an arbitrator and for further proceedings on Chamberland's claim that Arbella engaged in unfair settlement practices in violation of G. L. c. 176D and G. L. c. 93A, which we do not read as being based solely on the theories of waiver and estoppel.

<u>So ordered</u>.